## TELLURIDE POWER COMPANY v. BRUNEAU.

No. 2301. Decided April 18, 1912 (125 Pac. 399).

1. TRIAL—EVIDENCE—MOTION TO STRIKE. In a proceeding to condemn a strip of land on which to erect poles bearing wires heavily charged with electricity, a witness, after expressing his opinion on direct examination as to the depreciation in the value of defendant's farm by reason of the erection of such poles, stated on cross-examination that in arriving at this opinion he considered the danger of falling poles and wires. Plaintiff then moved to strike out so much of his testimony as referred to the depreciation of the part of the land not taken because based on considerations too remote and speculative. *Held* that, conceding that plaintiff's contention was sound, the motion was properly denied because too broad; the testimony being admissible as affecting the value of the land actually taken by plaintiff. (Page 11.)

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. As the granting of such motion would have merely resulted in striking out the reasons given by the witness, leaving his opinion in evidence, its denial, if erroneous, was harmless, especially where the court charged that the measure of damages was the diminution in market value of defendant's land, that damages from plaintiff's possible negligence in constructing and maintaining the line or from trespasses by it were not recoverable, and that the danger from falling wires should not be considered, unless such danger affected the market value. (Page 11.)

3. EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT. In a proceeding to condemn a strip of land on which to erect poles bearing wires heavily charged with electricity, if the presence of the wires would expose persons and live stock on the land of defendant not taken to danger, and thus depreciate the market value of such land, defendant was entitled to show such fact.[1] (Page 13.)

[1] Morris v. Railroad, 36 Utah, 14, 102 Pac. 629; O'Neill v. San Pedro, L. A. & S. L. R. Co., 38 Utah, 475, 114 Pac. 127.

4. TRIAL—QUESTIONS OF LAW OR FACT. Whether wires heavily charged with electricity are dangerous to persons or live stock in the vicinity is a question of fact.   (Page 13.)

5. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.   In a condemnation proceeding, the refusal to permit a witness on direct examination to testify to particular sales of similar property as bearing on the question of value, if error, was harmless, where the witness was permitted to testify that he had bought and sold lands, knew of sales of similar lands, and knew the market value of such lands and of defendant's land, and to state his opinion of the depreciation in the value of defendant's land.   (Page 14.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Condemnation proceeding by the Telluride Power Company aginst Moses Bruneau.

Plaintiff appeals from judgment assessing defendant's damages.

AFFIRMED.

*E. C. Lackner, L. W. Allen* and *B. A. Cummings* for appellant.

*L. L. Baker* and *Street & Bramel* for respondent.

APPELLANT'S POINTS.

In eminent domain proceedings, the general rule of damages obtains, which is, that damages to be recoverable must be certain and direct.   Contingent, speculative and remote damages are excluded from the consideration of the jury. (*Postal Tel. Co. v. O. S. L. Co.,* 23 Utah, 474; 65 Pac. 735, 740; 15 Cyc. 715, 716, 717; Lewis on Eminent Domain (3d Ed.), sec. 1313.)

The risk or possibility of future injury to persons or property by reason of the maintenance and operation of the contemplated improvement cannot be considered as a distinct

element of damage. These are imaginary dangers that may or may not occur, and if they do, the law affords a speedy and adequate remedy. If, however, the improvement is so constructed that the danger is real, appreciable and imminent, the danger may be considered as an element of damage, as bearing upon the depreciation in the market value. But, where the danger is remote, as the uncontradicted evidence in this case shows, damage from such a source cannot be considered for any purpose, and evidence thereof should be excluded from the jury. (*Jones v. Chicago Co.*, 68 Ill. 380, 384; *Kay v. Glade Creek Co.*, 47 W. Va. 467, 35 S. E. 973; *Indianapolis Co. v. Larrabee*, 80 N. E. 413; *Leroy v. Ross*, 40 Kan. 598, 20 Pac. 197; *McReynolds v. Burlington Co.*, 106 Ill. 152; *Indianapolis Co. v. Hill*, 86 N. E. 414; *Seattle Co. v. Gilchrist*, 4 Wash. 509, 30 Pac. 738.; *Atlantic Co. v. Postal Tel. Co.*, 120 Ga. 268, 48 S. E. 15; *Chicago Co. v. Mawman*, 69 N. E. 66; *Conness v. Indiana Co.*, 193 Ill. 464, 62 N. E. 221.)

In a proceeding to condemn land, evidence of sales of property similarly situated is admissible on direct examination. (*St. Louis Co. v. Clark*, 121 Mo. 169, 25 S. W. 192, 26 L. R. A. 751; *Loloff v. Sterling*, 31 Colo. 102, 71 Pac. 1113; *White v. Hermann*, 51 Ill. 243, 99 Am. Dec. 543; *Provision Co. v. Chicago*, 111 Ill. 651; *Paine v. Boston*, 4 Allen (Mass.), 168; *Cherokee v. Land Co.*, 52 Ia. 279, 3 N. W. 42; *Concord v. Greeley*, 23 N. H. 237; *Peoria Co. v. Peoria Co.*, 146 Ill. 372, 34 N. E. 550, 21 L. R. A. 373; Wigmore on Evidence, sec. 463 and note.)

The jury may not consider the information acquired by them from a view and wholly disregard the testimony of witnesses; the verdict must be supported by the substantial testimony of sworn witnesses and cannot rest solely upon the personal examination of the premises by the jury. (*Washburn v. Milwaukee Co.*, 59 Wis. 364, 18 N. W. 328; *Grand Rapids v. Perkins*, 78 Mich. 93, 43 N. W. 1037; *Peoria Co. v. Peoria Co.*, 34 N. E. 550, 21 L. R. A. 373; *Chicago Co. v. Parsons*, 51 Kan. 408, 32 Pac. 1083; *Kansas Co. v. Hill*, 80 Mo. 523; *Hoffman v. Bloomsburg*, 143 Pa. 503, 22 Atl.

823; *Flower v. Baltimore,* 132 Pa. 524, 19 Atl. 274; *Seattle Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 94 Am. St. Rep. 864; *Seifield v. Chicago Co.,* 67 Wis. 96, 29 N. W. 904.)

RESPONDENT'S POINTS.

In assessing damages in condemnation proceedings, danger from falling wire is not to be considered unless that danger injures the market value of the land. (*Leroy & W. R. Co. v. Ross,* 40 Kan. 598, 20 Pac. 197; *St. Louis Ry. Co. v. Oliver,* 87 Pac. 423; *Beckman v. Railway,* 122 N. W. 994; *Railway v. Bales,* 68 N. W. 342; *Johnson v. Railway,* 35 N. W. 438; *Railway Co. v. Columbia Synod,* 119 Pac. 60.)

Market value, after a witness has stated the same, cannot be further shown by evidence of specific sales. Specific sales may be matter for cross-examination, but it is not a proper subject for direct examination. (*U. P. Ry. Co. v. Stanwood,* 71 Neb. 150, 98 N. W. 656; *Robinson v. Railway Co.,* 175 N. Y. 219; *Becker v. Railway,* 177 Pa. 252, 35 L. R. A. 583; *Stinson v. Railway,* 27 Minn. 284, 6 N. W. 784; *O. R. & N. Co. v. Eastlacl,* 102 Pac. 1011; *C. R. R. R. v. Pearsons,* 35 Cal. 247; *Ry. Co. v. Vickroy,* 26 Pac. 698.)

STRAUP, J.

This is an action to condemn a strip of land twenty feet wide over the lands of the defendant for an electric power line extending from Bingham to the Garfield smelter. The defendant owns about 280 acres inclosed by fence. His land is about five miles from Tooele City. There is evidence to show that about 175 acres is under cultivation upon which lucerne and grain have been raised. The defendant also kept and pastured on his land from 100 to 200 head of cattle each year. The land is adaptable to the raising of general farm products, fruit, potatoes, and other vegetables. The power line extends over his lands for a distance of about 3200 feet. The poles on which the wires are strung are 300 feet apart. About ten or eleven poles are placed on the strip in question. The poles are of cedar timber, from thirty-five to fifty feet in length. Each pole has cross-arms upon which are strung

three wires to conduct electricity for electrical power and energy. The lowest wire suspended on the poles is twenty-three or twenty-four feet above the ground. The wires carry a voltage of 44,000 volts. The case was tried to the court and a jury. The only question submitted to the jury was that of compensation for the land taken and injured. A verdict was returned for the defendant assessing his damage in the sum of $1030. The plaintiff appeals.

No question is raised with respect to sufficiency of the evidence to support the verdict. The questions presented for review relate to the admission and exclusion of evidence, and to the charge.

A witness for the defendant, an eletcrical engineer, after having qualified as an expert, was asked by counsel for the defendant whether persons and animals on the ground and within ten feet of a transmission line of wires carrying a voltage of 44,000 volts, and constructed and operated as was the line of the plaintiff, would be exposed to danger from the wires. He answered that they would be if the wires were bare. This testimony was objected to by the plaintiff as referring to a danger or element which was too remote and merely speculative.

Other witnesses for the defendant, after having qualified and shown to have knowledge of the market value of the land in question, testified, some of them, that the market value of the defendant's land before the construction of the transmission line was $35,000, and after the construction $32,000; others, $30,000 before, and $27,000 or $28,000 after, the construction of the line; and still others, $25,000 before and $23,500 after the construction. On cross-examination they were asked by plaintiff on what they based the difference between the market value before and after the construction of the line. Among other things stated, and reasons, given, by them, they stated that they considered the danger to which persons and live stock were exposed by the highly charged wires, and the breaking and falling of wires and poles. These things were all brought out on cross-examination. No motion was made to strike the testimony of these witnesses ex-

cept one who had testified to such things after others had tes-
tified to them. This particular witness, on his cross-examina-
tion, among other reasons given by him which in his opinion
tended to show a depreciation of the market value of the land,
stated that: "In arriving at the elements of damage, I
consider the distance that them poles would fall either way,
which would mean a sixty-four foot dangerous strip of
ground, and, rather than take any chances of that danger, I
would fence it with a good fence that nothing could get in
there for that distance of the right of way. I consider the
damage from the danger of the poles falling at $950. I can't
say what proportion of this $1450 (the amount which he
stated was the difference between the market value before and
after the construction of the line) I would assess by reason of
the danger of the falling of the poles and wires. In estimat-
ing the damages, I did not consider future damages which
might result from a falling of the poles upon this land. . . .
With the poles and wires charged with electricity, there is
danger which I would want to eliminate as much as possible.
From that danger I place the depreciation at $950. If I
were the owner, I believe $950 ought to be allowed for that
danger in the selling price if I were trying to sell the land.
That leaves $500. I would take that $500 as a general dam-
age that would result from a continuous right of way for my-
self and every one else, one field into another," because of
the inconvenience in farming the land. "The right to farm
this strip and to pass through it is a detriment to" the de-
fendant. "If it were mine, I would rather not cultivate"
the strip. "I would fence up that right of way because of
that danger of falling wires and breaking of poles. In my
estimation of this $500 I consider the inconvenience it would
put me to with my farm, either in tilling it, pasturing it, irri-
gating it, and everything for that inconvenience I would be
put to in farming my place, maintaining a fence, if I had
one, along the pole line, or gates, either to enter it at either
end or in the center of it." At the conclusion of his cross-
examination, counsel for plaintiff stated: "I believe it is
apparent from the testimony of this witness that he has based

his valuation of the depreciation upon an element which is not a proper consideration of damage, which is the breaking of these wires and falling of these poles upon the property, for in case such an event happened the defendant would be entitled to recover whatever damages might accrue in another action, and it is something which is too remote and too speculate to place before the jury, and, in order for them to arrive at any fair estimation at all, *I move that so much of the testimony of this witness as refers to the depreciation of the part not taken be stricken out.*" The motion was denied. The court, in several different paragraphs, instructed the jury that the measure of damages and the amount of their verdict should be the diminution, if any, of the market value of the defendant's land by reason of the location of the electrical line upon it; that they, upon the evidence, should determine the fair market value of the land at the time of the commencement of the action without the line upon it, and then the market value of the land with the line upon it, and that the difference between the two, with interest, should be the amount of their verdict; and that in determining the damages they could only consider the actual depreciation, if any, in the market value caused by the construction and operation of the line in the manner contemplated by the plaintiff. The court further charged them that the damages to be assessed must be on the basis that the transmission line will be maintained in a skillful and proper manner, and that damages resulting from negligence in constructing and maintaining the line could be recovered in a proper action, and that no damages could be awarded on the theory that such negligence might happen, nor that trespasses might thereafter be committed by the plaintiff or its agents. The court also charged them that the danger from the overhead, wires heavily charged with electricity could only be considered by them as bearing upon the depreciation of the market value of the land, and that such fact could not be considered by them on any other theory; and in several different paragraphs admonished them that they must not base their verdict upon mere speculation and conjecture as to what might happen,

and expressly charged them that "you are to disregard any testimony based merely upon speculative and contingent possibilities, and confine yourselves to the actual damage of the property." The court then further instructed the jury, and as requested by the plaintiff, that "you are instructed that you should not consider in the assessment of damages such remote contingencies as danger to persons or stock or crops from the possible breaking or falling of the wires or other parts of plaintiff's transmission line," but added to such request, "unless upon consideration of the evidence you find by the preponderance thereof that that will injure the market value of the land."

The rulings refusing plaintiff's request and giving it as modified, admitting the testimony of the defendant's expert, and refusing to strike the testimony of the witness referred to, are complained of. The last will be considered first, the testimony of the witness who stated that in estimating the difference between the market value of the defendant's farm before and after the construction of the power line he considered, among other things, the danger from the wires and of their breaking and falling. It is here contended that such an element was remote and speculative, and for that reason could not properly be considered by the witness in estimating the depreciation of value, and therefore the statement made by him that he did consider such element ought to have been stricken on plaintiff's motion. The motion itself is indefinite and uncertain. If counsel thought the answer and opinion of the witness as to the market value after the construction of the power line or the depreciation of such value because of such construction was based on something not proper to be considered by the witness and not tending to affect value, a motion to strike such answer ought to have been made. No such motion was made. All that is claimed for the motion is that some of the reasons which the witness gave or some of the things testified to by him—the danger from the wires and of their breaking and falling—which were taken into consideration by him in arriving at his opinion as to the amount of the depreciation

of the market value of the land ought to have been stricken. But the motion was not restricted nor directed to such things. The motion was: "I move that so much of the testimony of this witness as refers to the depreciation of the part (of the land) not taken be stricken out." Manifestly this motion could not properly have been granted, even though plaintiff's position is sound, for the motion is broad enough to include, not only the things now complained of as being too remote and speculative, but everything else testified to by the witness in respect of the depreciation of the value of the land not taken. From the motion it would seem that counsel thought that all that the witness had testified to in respect of the depreciation of the value of the land not taken ought to have been stricken, but all that he had testified to, including the testimony that he considered the danger from the wires and of their breaking and falling, was competent and admissible as affecting the value of the strip occupied by the plaintiff, or that portion of it actually taken and occupied by it. Furthermore, plaintiff's contention is rather strange. Here is a witness who on direct examination testified that the difference between the market value of the defendant's land before and after the construction of the line was $1450. When on cross-examination he is asked by plaintiff's counsel on what that is based, the witness, among other things, gives a reason, and states something which appellant thinks is remote and speculative and which does not tend to effect value, and then asks, not to have the answer or opinion of the witness as to value stricken, but urges under the motion which was made that the court ought to have stricken that portion of the testimony of the witness showing that his opinion was partly based on something too remote and speculative. Thus, according to plaintiff's contention, the very thing which it claims affected the opinion or rendered it valueless, plaintiff sought to have stricken and taken from the jury, leaving the opinion before them. It would seem the more the plaintiff was able to show on cross-examination that the value which the witness had fixed on his direct examination was based on mere speculation and conjecture, the more it had modified, cut down,

and affected the weight of the testimony of the witness. And, as his opinion remained in evidence and was not asked to be stricken, it would seem more beneficial than harmful to the plaintiff to have the testimony also remain showing that the opinion was based or partly based on something claimed to be speculative and not tending to affect value. We think the plaintiff was not harmed by the ruling, and that its rights in the particular complained of were fully protected by the charge.

It is further contended that the defendant was not entitled to show by its expert that the wires upon the line of poles and heavily charged with a voltage of 44,000 volts would be dangerous to persons and animals within ten feet of the transmission line, for the reason that the showing of such fact entered the field of mere speculation and conjecture. Of course, the defendant was entitled to show all the circumstances and conditions tending to depreciate his property, and all facts affecting the market value of it. If the existence of the wires exposed persons and live stock coming within ten feet of the transmission line to danger, we do not see why the defendant was not entitled to show that fact as tending to depreciate the property and affect the market value of it.

Whether the wires so charged would expose persons and live stock to danger was a question of fact, not of law. The evidence no doubt was offered and received to show an immediate presence of such a danger. We think the evidence was properly received, and that the ruling is analogous to the doctrine generally announced by the courts in proceedings to condemn lands for a right of way for railroad purposes, that in estimating the amount of recovery the jury can properly consider as an element of damages the facts of whether stock would be liable to be accidentally killed, or crops and fences and buildings destroyed by fire without fault on the part of the railroad company, in so far as such things were shown by evidence and tended to depreciate the value of the farm or tract of land through which the right of way is sought, not as independent items of

damages, but as affecting the market value of the land not taken. (1 Lewis, Em. Domain (3d Ed.), sec. 740; *Leroy & W. R. Co. v. Ross,* 40 Kan. 598, 20 Pac. 197, 2 L. R. A. 217; *Beckman v. Lincoln & N. W. R. Co.,* 85 Neb. 228, 122 N. W. 994, 133 Am. St. Rep. 655; *Alloway v. Nashville,* 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123.) And to this effect are the holdings of this court in th cases of *Morris v. Railroad,* 36 Utah, 14, 102 Pac. 629, and *O'Neill v. San Pedro, L. A. & S. L. R. Co.,* 38 Utah, 475, 114 Pac. 127.

This brings us to the ruling complained of in refusing plaintiff's request, and giving it as modified, that the danger to persons or live stock from the breaking or falling of wires could not be considered as an independent item of damage, but could be considered by the jury as bearing on the market value of the defendant's land, if they, upon a preponderance of the evidence, found that the value therof was affected thereby. We think this charge is in harmony with the doctrine just referred to.

A witness for the plaintiff on direct examination testified that he had bought and sold farm lands in the vicinity of the defendant's land; that he knew of and was familiar with sales of lands similar to that of the defendant; that he was acquainted with the defendant's land, and had examined it with a view of determining its market value; that he knew the power line and the place it crossed his land; that the market value of the defendant's farm before the construction of the power line was not to exceed $10,000; that the market value of the twenty-foot strip without the poles upon it was sixty dollars and with the poles forty dollars; and that the balance of the farm was not injured nor the market value of it depreciated by reason of the construction and maintenance of the power line. Then, in response to further questions propounded to him on his direct examination he further stated that he was acquainted with sales of lands similar in character to the defendant's land, and that he had knowledge of the sale of a particular tract near the defendant's land, and that he obtained such information from the agent of the parties who had pur-

chased the tract. Thereupon the court, on its own motion, observed: "You are seeking to prove particular sales, are you? Counsel for Plaintiff: Yes, sir." The court stated: "That is not admissible under the rule on direct examination" —and observed that such things may be inquired about on cross-examination, and then on redirect, but not on the direct examination. "Counsel: Do I understand the court to rule, then, that the witness on direct examination cannot give his statement of particular values of similar property? Court: Yes; that is the uniform practice." This ruling is complained of. As stated in 1 Elliott, Ev., section 180, Jones, Ev. (2d Ed.), section 168, and 13 Ency. Ev., pp. 457-463, there is a marked conflict of opinion as to the competency of evidence on direct examination to show the sale price of other lands of general similarity in location, character, and adaptability to use of the lands sold with those the value of which is in question, and of sales made about the time the value of the latter must be established. The cases supporting the affirmative and those the negative of the proposition are there noted. Even though the conclusion should be reached that such sales may properly be shown on the direct examination, yet we are clearly of the opinion that in this instance the plaintiff was not harmed by the ruling. The witness had already stated that he had bought and sold lands; that he knew of sales of lands similar to that of the defendant; that he knew the market value of such lands and the market value of the defendant's land, and stated what that was, and the amount which in his opinion the value of the defendant's land was depreciated by reason of the construction of the power line over it. In such case the plaintiff was not prejudiced even though it be assumed that it, on the direct examination of the witness, was entitled to show sales of other lands. (*Seattle & M. Ry. Co. v. Gilchrist,* 4 Wash. 509, 30 Pac. 739; *Teele v. Boston,* 165 Mass. 88, 42 N. E. 506; *Sargent v. Merrimac,* 196 Mass. 171, 81 N. E. 970, 11 L. R. A. (N. S.) 996, 124 Am. St. Rep. 528.) At any rate, it is not such an error, if there be one, as requires a reversal of the judgment.

We are of the opinion that no reversible error is shown, and that the judgment of the court below ought therefore to be affirmed, with costs. It is so ordered.

FRICK, C. J., and McCARTY, J., concur.