Baucum *v.* Arkansas Power & Light Company.

Opinion delivered March 11, 1929.

*Coleman & Riddick,* for appellant.

*Robinson, House & Moses* and *W. H. Holmes,* for appellee.

Smith, J. This suit was brought by appellee, Arkansas Power & Light Company, to condemn a right-of-way for an electric power transmission line across lands belonging to appellants. There was a verdict and judgment in appellants' favor for $3,500, from which is this appeal.

Appellants own a plantation consisting of 1,800 acres, of which 1,500 are in cultivation, and the power line runs diagonally across the plantation.

The court gave, over appellants' objection, the following instruction:

"The damages to which the defendants are entitled in this case are the difference between the fair cash market value of the 80-foot right-of-way before the line was constructed and the right to maintain it as established, and the value of the 80-foot right-of-way afterward. Considering that the plaintiff has the right to construct and maintain its poles and line as now constructed and to use any part of the 80-foot right-of-way for that purpose, and the defendants have the right to make any use of the 80-foot right-of-way they may see fit, so long as such use does not interfere with the construction and maintenance of said line as now constructed, in determining the damage to the 80-foot right-of-way, you will determine from the evidence the difference between the fair cash market value before the construction and the right to maintain it as established, and its fair cash market value after its construction, and allow the defendants an amount equal to the difference.

"The plaintiffs have no right in the remainder of defendants' land outside of the 80-foot right-of-way, but the defendants claim that the construction has damaged the remainder of their lands outside of the 80-foot right-of-way. If you find from the testimony that the construction of the line along the 80-foot right-of-way has damaged other lands of defendants, then you will deter-

mine from the testimony the difference, if any, between the fair cash market value of such other lands before the construction and the fair cash market value of such lands after the construction, and allow the defendants a difference, if you find there is a difference. By a fair cash market value is not necessarily meant the value at a forced sale, but its value considering the reasonable length of time in which to make the sale.

"In determining the damages, you will not speculate as to the damages, but will determine the damages from all the testimony in the case. You will not consider any benefits that may accrue to the lands by the construction of said line. In arriving at the amount of damages in this case you will not consider the possibility or probability of any danger or damage that may arise as to individuals or property from the presence of said line."

The following specific objections were made to the instructions:

(1) To the use of the word "cash," in addition to the word "market," as adjectives qualifying the noun "value," for the reason that the instruction appears to require the jury to find the amount for which the lands could be sold for cash. (2) Because the instruction limits the damages resulting from the line as "now constructed" and "as established," thereby excluding from the jury's consideration the fact that the company has the right to add to or change its line within the limit of the right-of-way. (3) Because it excludes from the consideration of the jury the danger and damage to persons and property, whereas the possibility or probability of such danger and damage affects the market value of the land.

Certain other objections were made, which we do not think require discussion.

Appellants requested instructions to the following effect:

(1) To find for the defendants for a sum equal to the value of the land taken by plaintiff for its right-of-way, plus the damage to the remainder of the land,

if any. (2) That, though the plaintiff acquired what is technically known as an easement across defendants' plantation, it is liable to the defendants for the full value of the right-of-way as if the fee had been taken. (3) In determining the value of the land taken, the defendants are entitled to recover the highest price it would bring after allowing defendants ample opportunity to sell it.

Defendants requested an instruction numbered 6, which the court refused, and which reads as follows:

"You are instructed that defendants must obtain compensation for any property taken from them and any damage done to them by reason of the location of plaintiff's line across their plantation in this suit, and that if they fail to obtain such compensation in this proceeding they will be without remedy hereafter. When the power company has condemned a right-of-way across defendants' plantation in this suit, it has the right to occupy the whole of said right-of-way at any time its business may so demand. It has the right to exclude the defendants from said right-of-way whenever such exclusion is necessary to the operation of plaintiff's line. It has the right always to enter upon the right-of-way for the purpose of improving, repairing and building additions to its line, and it has the right to destroy any crop that may be growing thereon, if necessary, and defendants hereafter have no right in law to recover of the plaintiff any damage they may sustain by reason of the use of the right-of-way."

Instruction numbered 7 requested by defendants, which was also refused, would, if given, have charged the jury "to consider the value of defendants' land for all purposes, as shown by the evidence, including any special value it may have by reason of its situation, for the use of a power transmission line."

These objections and exceptions require a discussion of the proper measure of damages recoverable by a landowner whose lands are condemned for a right-of-way for an electric power line.

We think the court should have omitted the word "cash," as defendants requested, and should then have defined the term "market value."

Section 9 of article 12 of the Constitution provides that: "No property nor right-of-way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law."

In determining what is full compensation for property, or right-of-way through property, this court has several times defined the term "market value," one of the latest being that of *Rinke* v. *Union Special School District*, 174 Ark. 59, 294 S. W. 410, in which we approved an instruction telling the jury that "* * * the market value is what the land would be reasonably worth on the market for a cash price, allowing a reasonable time within which to effect a sale." In approving this instruction we said that "* * * just compensation is held, by a long line of our decisions, to be the actual market value of the land at the time of the institution of the condemnation proceedings, and, since the compensation was to be paid in money, no error was committed in the court telling the jury that the amount of money the school board ought to pay (for the land condemned) would be the fair cash market value at the time of the taking, stating it to be what the land would be reasonably worth on the market for a cash price; allowing reasonable time within which to effect the sale."

In other words, where one's land is taken in the exercise of the right of eminent domain, he must have full and just compensation in money, and market value is the sum "the land would be reasonably worth on the market for a cash price;" but the term *cash price,* as here employed, means a sum payable in cash, as contradistinguished from an exchange of properties. It does

not mean that the entire purchase price should be paid in cash upon the delivery of a deed. A sale would be for cash within the meaning of this definition if made for a sum paid in money or for a sum paid and pay-able in money. For instance, A owns a farm which he is willing but not required to sell. B wishes to buy it, but is not required to do so at an excessive price. A and B agree upon a price of $20,000, of which B pays in money $10,000, with balance payable in one year, or other customary time, this balance being secured by a lien on the property itself, and bearing interest at a rate equal to the legal rate. If this security is such that the balance of the purchase price, with the interest thereon, can, in the usual and ordinary course of business, be certainly realized out of the property, the sale is for cash, because its equivalent will be realized.

It is a matter of common knowledge that farms are rarely, if ever, sold for a sum in cash laid down on the barrel-head, and if the landowner is to be limited to such a sum as he could get when the entire purchase price is paid cash down, he would be deprived of the valuable right of having his property appraised according to the cus-tom and usage in selling farm lands. Cash value simply means money value, the value payable in money, as dis-tinguished from a price which would be employed as the basis of an exchange. It would be a sale for cash, as the term is employed in eminent domain cases, if the sale was for the equivalent of cash.

We do not reverse the judgment because this instruc-tion was given, but, in view of the specific objection made to it, the court should have defined the term "market value" as herein defined, without the addition of the word "cash." In other words, there should have been no implication in the instruction, in view of the specific objection made, that the market value could not exceed the sum which the owner could obtain for cash counted out and paid down. Of course, the market value, when thus ascertained, must be paid in money, but this is true because the Constitution has provided that it is upon

this condition that the right of eminent domain may be exercised. There is no element of contract in the exercise of this right. Indeed, it is ordinarily exercised only when, as in the instant case, the parties have been unable to agree—to contract. In such a case the compensation guaranteed the owner by the Constitution must be paid in money, but the market value is arrived at by determining what one who is willing but not required to sell will take and what another who is willing and not required to buy will give, that sum being payable in cash when paid in accordance with the custom prevailing in similar sales.

In the case of *Calor Oil & Gas Co.* v. *Franzell*, 128 Ky. 715, 109 S. W. 328, 36 L. R. A. (N. S.) 456, the Court of Appeals of Kentucky approved the following statement of the law appearing in 15 Cyc., page 685:

"Market value means the fair value as between one who wants to purchase and one who wants to sell, not what could be obtained for it under peculiar circumstances when a greater than its fair price could be obtained, nor its speculative value, nor a value obtained from the necessity of another, its present value at a sale which a prudent owner would make if he had the power of election as to the time and terms * * * ."

The opinion also quoted with approval the following statement of the law from 10 Am. & Eng. Enc. of Law (2 ed.) page 1151:

"* * * The market value of land is usually declared to be not what the land would bring at a forced sale, but what it would bring in the hands of a prudent seller, at liberty to fix the time and conditions of sale."

See the numerous cases cited in the notes to the text quoted.

In the case of *Metropolitan St. Ry. Co.* v. *Walsh,* 197 Mo. 392, 94 S. W. 860, the Supreme Court of Missouri said:

"The jury, when told that the market value was such price as could be obtained for it (the land) on the usual or ordinary terms of private sale, would have no

trouble in understanding what was meant by the court, for it would only be necessary to apply their common and everyday observations of the purchases and sales of real estate between their neighbors and other persons transacting such business."

See also *Madisonville H. & E. R. Co.* v. *Ross,* 126 Ky. 138, 103 S. W. 330; *Opelousas, G. & N. E. R. Co.* v. *Bradford,* 118 La. 506, 43 Sou. 79; *In the Matter of the Application by the City of Buffalo* to take lands for a new reservoir, 1 Sheldon's Buffalo Superior Court Reports, 408; 3 Dillon's Municipal Corporations (5 ed.), § 1059, page 1673, § 1060, page 1674; 10 Am. & Eng. Enc. of Law (2 ed.), page 1152; 1 Nichols on Eminent Domain (2 ed.), § 217.

The instructions given and refused and the objections thereto present the question whether the jury should have assessed the damages as if the fee had been taken, that is, whether the jury should have found the full market value of the land taken. There appears to be some conflict in the authorities on this question, but we are of the opinion that those cases holding that the full market value of the land should be assessed are more in consonance with our Constitution.

We adopt the view of the Supreme Court of Tennessee in the case of *Kentucky-Tennessee Light & Power Co.* v. *Beard,* 152 Tenn. 348, 277 S. W. 889, where it was held, after a review of the authorities (which we do not repeat), that, where an electric light and power company, in condemnation proceedings, acquired a permanent easement across the land of another, it became liable for the full value of the right-of-way as if the fee had been taken. And the fact that the owner was given the permissive use of the right-of-way could not be considered in reduction of the sum to be allowed as compensation. The trial court was therefore in error in limiting the consideration of the jury to the line as "now constructed" and "as established," for the reason that the company acquired by the condemnation proceedings the power to make such use of

the right-of-way as its future needs required for the purpose for which the right-of-way was condemned.

The court should also have charged the jury that full compensation for the market value and damages should be assessed in this suit, as future damages could be recovered only for the negligent use of the right-of-way condemned.

In the case of *Telluride Power Co.* v. *Bruneau*, 41 Utah 4, 125 Pac. 399, the Supreme Court of Utah said (to quote a syllabus):

"In a proceeding to condemn a strip of land on which to erect poles bearing wires heavily charged with electricity, if the presence of the wires would expose persons and live stock on the land of defendant not taken to danger, and thus depreciate the market value of such land, the defendant was entitled to show such fact."

This view accords with the opinions of this court in the cases of *Little Rock, M. R. & T. Ry. Co.* v. *Allen*, 41 Ark. 431, and *Railway Co.* v. *Combs*, 51 Ark. 324, 11 S. W. 418.

What we have just said does not mean that the jury in a condemnation suit should attempt to compensate the owner for live stock which might hereafter be killed or injured, but means only that, if the testimony shows there is such probability, and that fact affects the value of the land not taken, the same may be considered in assessing damages. The court's instructions specifically excluded this possible element of damage, and this was error.

On the question of damage to the land not taken the court properly charged the jury as follows: "If you find from the testimony that the construction of the line along the 80-foot right-of-way has damaged other lands of defendants, then you will determine from the testimony the difference, if any, between the fair cash market value of such other lands before the construction and the fair cash market value of such lands after the construction, and allow the defendants a difference, if you find

there is a difference." However, what we said above about the use of the word "cash" applies here.

Appellants' instruction numbered 7, quoted above, is a correct declaration of the law, abstractly considered, but we think no error was committed in refusing it as applied to the facts of this case.

The testimony shows that when the right-of-way ·line of the power company reached appellants' farm the right to continue across it was highly valuable, and that it would have been much more expensive to go around the farm than to go through it, this fact being accentuated by the presence of a lake on each side of the farm. The cases of *Desha* v. *Independence County Bridge District,* 176 Ark. 253, 3 S. W. (2d) 969; *Fort Smith & Van Buren Dist.* v. *Scott,* 103 Ark. 405, 147 S. W. 440; and *Gurdon & F. S. Ry. Co.* v. *Vaught,* 97 Ark. 234, 133 S. W. 1019, are cited in support of this contention.

In the first two cases the facts were that the lands condemned, by reason of their location, possessed a special value as a suitable location for a bridge, which other lands did not have. In the last cited case there was a pass between two mountains through which a railroad had to run to avoid large construction cost. Nothing of that kind is true here. Indeed, the testimony shows that it would have been and was much cheaper to run through appellants' farm than it would have been to run around it, and this difference in cost was enhanced by the presence of lakes, but this fact would not have supported a finding that appellant's land possessed a peculiar value as the location for the right-of-way of a power line between Little Rock and Pine Bluff, the termini of the line. Of course, when any owner's land was reached, the right to continue across is valuable, and the exercise of this right saves the additional cost of diverting the route. But, if appellants were allowed to recover as an element of damage this difference in cost, it could not be denied all other landowners, for each one would claim it when the line of the right-of-way reached his property. The court evidently—and we think properly—took the view

that appellants' land did not possess any peculiar value as the location of a power line between Little Rock and Pine Bluff.

Other questions are raised which we find it unnecessary to discuss, but, for the errors indicated, the judgment of the court below must be reversed, and the cause will be remanded for a new trial.

HART, C.J., and MEHAFFY and McHANEY, JJ., dissent.