**STATE of Alaska, Appellant,**

v.

**7.026 ACRES, more or less; William W. Friday, et al., Appellees.**

**No. 1106.**

Supreme Court of Alaska.

March 16, 1970.

G. Kent Edwards, Atty. Gen., Juneau, Richard P. Kerns, Asst. Atty. Gen., Anchorage, for appellant.

No appearance for appellees.

Before: DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

DIMOND, Justice.

In the exercise of the power of eminent domain, the state condemned 7.026 acres of land for highway purposes. A master appointed by the superior court awarded $4,-214 as just compensation. Appellee Friday, the owner of the property, appealed from the master's report, and a jury awarded $22,455 as just compensation.

On the state's motion for a new trial, the superior court determined that the evidence was insufficient to justify an award of more than $17,770, and granted the state's motion for a new trial unless a reduction in the award, or a remittitur was accepted by appellee. He accepted the remittitur to $17,770, and the court entered a judgment for that amount and denied the state's motion for a new trial. The state has appealed, claiming error in certain evidentiary rulings made by the trial court.

Maurice Gebhart testified as to the value of the property. When asked on cross-examination whether his valuation was based on what the property would have sold for in cash, Gebhart stated that property of that type and value was more often than not sold on terms, rather than for a cash payment of the total purchase price. The state contends that the testimony was incompetent because Gebhart's valuation was not based on cash value. What the state appears to argue is that fair market value is the price that could be realized from a buyer able to pay the entire purchase price in cash, rather than one who would buy partly with a cash payment, with the balance payable on terms, such as in monthly installments.

Gebhart was giving his opinion of the fair market value of the property, which is a legitimate method of ascertaining just compensation.[1] Fair market value is the price in money that the property could be sold for on the open market under fair conditions between an owner willing to sell and a purchaser willing to buy, with reasonable time allowed to find a purchaser.[2] It is not necessary, in order to give credence to a witness' opinion of fair market value, to also require him to show that the property and market value are such that the entire purchase price could be expected to be paid at the time of sale.

In defining fair market value for the jury, the trial court spoke of the price that would be paid "in cash" on a free and open market.[3] The reference to cash is significant only as indicating that value was to be assessed in terms of money, rather than in terms of something of value other than money.[4] A sale would be for cash,

1. Bridges v. Alaska Housing Authority, 375 P.2d 696, 698 (Alaska 1962).

2. Bridges v. Alaska Housing Authority, 375 P.2d 696, 698 (Alaska 1962); Olson v. United States, 292 U.S. 246, 257, 54 S. Ct. 704, 78 L.Ed. 1236, 1245 (1934).

3. The court's Instruction No. 2 provided in part:
   Fair market value is that price, upon a free and open market, which a buyer who is willing and fully informed, but not compelled to buy would pay in cash for a given property, and in which a

seller who is willing and fully informed, but not compelled to sell, would accept in cash for the property; that is to say it is the price which the owner would be willing to take and it is the price which the purchaser would be willing to pay in cash on a free and open market, both acting intelligently and without either being compelled to make the transaction.

4. Baucum v. Arkansas Power & Light Co., 179 Ark. 154, 15 S.W.2d 399, 401 (1929).

within the meaning of the court's instruction, if the total purchase price was paid in money at the time of sale. The sale would also be for cash if the purchase price was payable in money, partly at the time of sale and partly on terms of reasonable credit by way of deferred payments.[5] Gebhart's testimony regarding the likelihood of the property involved being sold on terms, rather than for a total cash price at the time of sale, was not incompetent and was admissible.

As its second point on appeal, the state contends that the trial court erred in admitting the following evidence: (1) the testimony of witnesses Mercer and Tomlinson as to previous sales of subdivided lots owned by them in the vicinity of appellee's property; (2) the testimony of appellee as to his intention to subdivide his property into about 55 lots and sell them as recreational cabin sites; and (3) a proposed subdivision plan prepared by appellee in 1962, which had never been submitted to nor acted up by any governmental agency. The state argues that evidence of potential uses to which condemned property may be put must be limited to those which are reasonably and naturally adaptable in the foreseeable future, and that evidence of a property owner's plan to subdivide property into lots, where no significant steps have been taken to effect the subdivision, is inadmissible because too remote and speculative to merit consideration by a jury.

█ Appellee was entitled to just compensation for the taking of his property by the state.[6] Just compensation is measured by the value of the property taken. One criterion for determining value is what the property is worth on the market—its fair market value, and this is to be determined by a just consideration of all the uses for which the property is suitable. It is the widely accepted rule that the highest and most profitable use for which the property is adaptable is to be considered, to the extent that the prospect of demand for such use affects the market value while the property is privately held.[7]

█ Such adaptability, merely within the realm of possibility, is not sufficient. It must be shown that the use for which the property is claimed to be adaptable is reasonably probable.[8] If this cannot be shown, evidence of prospective use must be excluded because it would allow mere conjecture and speculation to become a guide for ascertainment of value, and this is not a permissible method for the judicial ascertainment of truth.[9]

Counsel for the state stipulated at the trial that the "highest and best use" of appellee's property was for subdivision into cabin sites. The evidence presented, including that objected to by the state, tended to establish the validity of that stipulation. There was evidence that similar property in very close proximity to appellee's property had been subdivided and the resulting lots sold. There was evidence that appellee had planned a subdivision in 1962, that since then he had constructed 26 access roadways to accommodate 33 proposed lots to be used as cabin sites, and that some of his property had already been used for such purposes.

█ All of this evidence tended to show that the adaptability of appellee's property for subdivision purposes was reasonably

5. Baucum v. Arkansas Power & Light Co., 179 Ark. 154, 15 S.W.2d 399, 401 (1929) ; Riley v. District of Columbia Redevelopment Land Agency, 100 U.S.App.D.C. 360, 246 F.2d 641, 643 (1957).

6. Alaska Const. art. I, § 18 provides: Private property shall not be taken or damaged for public use without just compensation.

7. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236, 1244

(1934) ; 4 Nichols, Eminent Domain § 12.314 (rev. 3d ed. 1962).

8. Olson v. United States, supra note 7, 292 U.S. at 257, 54 S.Ct. at 709, 78 L.Ed. at 1245–1246; United States v. Waterhouse, 132 F.2d 699, 703 (9th Cir. 1943) ; 4 Nichols, Eminent Domain § 12.314, at 140–152 (rev. 3d ed. 1962).

9. Olson v. United States, supra note 7, 292 U.S. at 257, 54 S.Ct. at 709, 78 L.Ed. at 1245–1246.

probable, and not just conjectural or speculative, and therefore was admissible as bearing on the fair market value of the property.

■ The state's argument against the admissibility of the evidence objected to is directed mainly at the proposed subdivision plan that appellee had prepared, and which was introduced in evidence as an exhibit. It has been held that such a plat is not admissible in evidence.[10] Although various reasons have been given for holding it error to allow a subdivision plat to be considered by the trier of fact, the main basis seems to be that under the facts of a particular case the use of the land for subdivision purposes is too remote and speculative to influence present market value. On the other hand, where the adaptability of the land for subdivision use is shown to be reasonably probable, and not too remote or speculative, then a subdivision plat is admissible as illustrating the potential and reasonably probable use.[11] That was the purpose of introducing appellee's proposed subdivision plan in this case. Its admission into evidence was not improper.

The judgment is affirmed.

NESBETT, C. J., not participating.

10. Arkansas State Highway Comm'n v. Parks, 240 Ark. 719, 401 S.W.2d 732, 733–734 (1966); Lower Nueces River Water Supply Dist. v. Collins, 357 S.W. 2d 449, 452 (Tex.Civ.App.1962); Annot., 26 A.L.R.3d 780, 786, 792–96, 805–11, 819–24, 830–34, 837–44 (1969).

11. Iske v. Metropolitan Util. Dist. of Omaha, 183 Neb. 34, 157 N.W.2d 887, 893–894 (1968); 5 Nichols, Eminent Domain § 18.11 [2], at 18–57, 18–58 (rev. 3d ed. 1962); Annot., 26 A.L.R.3d 780, 789–92, 796–805, 811–19, 827–30, 834–37 (1969).