**Wallace E. MARTENS and Frank W. Harris, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 2394.**

Supreme Court of Alaska.

Sept. 6, 1976.

---

Irving S. Bertram of Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

Richard P. Kerns, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from a jury verdict awarding appellants Martens and Harris $182,650 as compensation for the condemnation of their land. On March 9, 1973, the state exercised its power of eminent domain and condemned property owned by appellants for highway purposes. The parcel of land which is the subject of this appeal was designated No. 134 by the State Department of Highways, and the state took 38,008 square feet of the parcel's total area of 45,008 square feet, to create a right of way for the 30th Avenue Couplet Highway Project.

Parcel No. 134 had 152½ feet of frontage on Spenard Road, near the Montgomery Ward Shopping complex, and ranged from 291 to 300 feet in depth. When the land in parcel No. 134 was zoned in 1971, the zone line cut across the property, following neither the lot nor the property line; as a result, all land fronting Spenard Road, extending back to a depth of 100 feet, was zoned B–3 for commercial use. The remainder of the property was restricted to R–3 residential use.

Appellants rejected the state's initial offer of $138,300 as just compensation for the property, and on June 25, 1973, a master awarded the landowners $218,700. The state appealed the master's award and simultaneously raised its own offer to $165,960. The case was heard by a superior court jury in late October, 1974, the

chief dispute at trial being the correct method of valuing the property.

The state proferred the theory that the worth of the B–3 and R–3 portions of the parcel should be computed separately and presented expert testimony that the market price of commercial property in the area was roughly three times that of land limited to residential use. The heart of the landowners' case was that the entire parcel should be valued as land zoned for commercial use, since the portion of the property zoned R–3 would in all likelihood have been changed to B–3 commercial had the condemnation not occurred. In support of this theory, appellants Martens and Harris offered proof that the parcel's bifurcated zoning scheme was highly unusual and inappropriate, that the highest and best use of the entire parcel was for commercial development, that at least one nearby lot had been changed from R–3 residential to B–3 commercial without opposition, and that a zoning change would have been relatively inexpensive and easy to obtain.

Appellants contend first that the jury was entitled to consider the probability of prospective zoning changes in determining the value of the condemned land. They argue that the instructions given by the trial court were inadequate in covering the applicable law and erroneously limited the jury to consideration of the value of the most profitable use to which the property might be put under the existing zoning ordinances.

■ Although we have never decided precisely this issue, it is a well established rule of law that a jury, in determining the fair market value of condemned land, may consider zoning changes which were reasonably probable at the time the land was taken.

The general rule is that present market value must ordinarily be determined by consideration only of the uses for which the land 'is adapted and for which it is available.' The exception to this general rule is that if the land is not presently available for a particular use by reason of a zoning ordinance or other restric-

tion imposed by law, but the evidence tends to show a 'reasonable probability' of a change 'in the near future' in the zoning ordinance or other restriction, then the effect of such probability upon the minds of purchasers generally may be taken into consideration in fixing present market value. *Long Beach City High School Dist. v. Stewart,* 30 Cal.2d 763, 185 P.2d 585, 173 A.L.R. 249 (1947), quoting from Nichols on Eminent Domain.

This reasoning has been adopted by many other jurisdictions. *See e. g., State Highway Commission v. Oswalt,* 1 Or.App. 449, 463 P.2d 602 (1970); *State v. Motor Freight Terminals, Inc.,* 57 Wash.2d 442, 357 P.2d 861 (1960); and 4 Nichols on Eminent Domain, 3d ed., § 12.322(1), page 238.

■ The rule that probable zoning changes may be considered by the jury in eminent domain cases has its foundation in two concepts basic to the law of valuation of condemned property, and we have previously articulated both of these underlying principles. First, fair market value of condemned property is the amount which a fully informed seller would receive from a fully informed buyer in a normal, open market sale. *State v. 7.026 Acres,* 466 P. 2d 364, 365 (Alaska 1970). It is manifest that probable zoning changes would enter into the price negotiations of an informed buyer and seller and would thus affect the market value. Second, the highest and best use for which the property is adaptable and which is reasonably probable at the time of valuation should be considered if it would affect the fair market value of the land. *Id.* at 366; *Dash v. State,* 491 P.2d 1069, 1073 (Alaska 1971). *See also Ketchikan Cold Storage Company v. State,* 491 P.2d 143, 151 (Alaska 1971). Consequently, if a zoning change would convert the land to its highest and best use, then the jury should consider the probability of such a change in its determination of whether the more profitable use was likely at the time of valuation.

Since there was sufficient evidence to support appellants' theory that a change in zoning of their land from R–3 residential to B–3 commercial was reasonably probable at the time the land was condemned, they were entitled to an instruction which would have permitted the jury to consider that theory. *People v. Donovan*, 57 Cal.2d 346, 19 Cal.Rptr. 473, 369 P.2d 1, 4 (1962). Appellants offered the following instruction which the trial court rejected:

A witness may also consider the reasonable probability, if any, of a change in zoning restrictions in the near future and the effect such a probability would have upon the value of the property. Thus, in weighing the opinion of a witness as to the value of the subject property, based in part upon the reasonable probability of a change in zoning in the near future, you must determine whether or not the evidence establishes that there is in fact a reasonable probability of such change in zoning in the near future. Tr. 622.

The court apparently agreed with the landowners that the jury should be able to consider probable zoning changes but felt that the instructions which were given adequately covered the law.

THE COURT: All right. The record may so reflect that the court has given an instruction which I deem appropriately covers that in other instructions, is the reason I did not give that one. Tr. 622

The narrow issue which we must decide is whether the trial court was correct in its determination that the instructions, as given, allowed the jury to consider the reasonable probability of zoning changes in deciding the value of the condemned land.[1]

Two of the instructions, dealing with the principles that fair market value is the price an informed buyer will pay an informed seller and that zoning might be a factor in their negotiations, were innocuous; they neither instructed the jury of its right to consider probable zoning changes, nor did they leave a contrary impression. The instruction which is troublesome provided:

In your deliberations, you should consider the highest and best use of the property being condemned and base your verdict upon the fair market value of the property for that use. The use being made of the property before the State filed this action may or may not be the highest and best use—that is a matter for you to determine from the evidence. But before you are entitled to make an award based upon the property being valued to a higher and better use than the one to which it was actually being put, you must be convinced that such other use was reasonably probable within the immediate future and not just a remote hypothetical or speculative possibility. You must, in other words, consider the evidence bearing upon the conditions and wants of the community existing before this case began and those reasonably to be expected immediately thereafter.

Highest and best use is defined as the most profitable legal use to which the property is likely to be put at the date of valuation. A legal use of the property is one consistent with applicable statutes, ordinances and regulations, including zoning and building codes, imposed by state and municipal governing bodies. (Jury instruction no. 15)

This instruction allowed the jury to consider the most profitable legal use, *consistent with the applicable zoning laws*, to which parcel No. 134 was likely to be put at the date of valuation. Although there

---

1. In many of the cases on this subject, the issue for decision has been whether sufficient evidence of the probability of the zoning change has been presented to warrant submission of the theory to the jury. Since Judge Moody apparently agreed with the content of the instruction proposed by appellants and rejected it only because he felt he had covered the applicable law in other instructions, we need not treat that issue in this case.

was no dispute that the highest and best use for the entire parcel was commercial development, the jury was limited to the split zoning plan by this instruction, since that scheme was applicable at the date of condemnation. In instructing the jury in such a way that it could not consider reasonably probable zoning changes, the trial court committed error. In *People ex rel. Department of Public Works v. Donovan,* 19 Cal.Rptr. at p. 476, 369 P.2d at 5, the court reversed a jury verdict on the basis of a misleading instruction, commenting:

> There is a substantial and reasonable probability that the instruction given, although open to other interpretations, could be construed by the jury as barring considerations of increased values based on prospective changes in uses to which the land may be devoted. The jury might well have concluded from the instruction given that the only use which could be considered in evaluating defendant's property was a present lawful use, and that the only present lawful use was for single family residences. This is not consistent with the rule adopted in *Long Beach City High School Dist. v. Stewart,* supra.
>
> \* \* \* \* \* \*
>
> In any event, there was not justification for an instruction, which upon a reasonable construction thereof, prevented the jury from considering defendant's theory, and the prejudice resulting to defendant as the result of the erroneous instruction is manifest. Upon a retrial of the cause it may be assumed that an instruction conforming to the statement in the Stewart case will be submitted.

In the case before us, as in *Donovan,* the erroneous instruction severely impaired appellants' theory of valuation of their property, and since their substantial rights were affected, the trial court's error was reversible. *Martinez v. Bullock,* 535 P.2d 1200 (Alaska 1975).

Appellants also raise the issue of their entitlement to attorney's fees accrued during the period between the master's award and the jury's verdict. Because we are remanding this case for a new trial, there is no need for us to reach this issue.

The judgment is reversed and the case remanded for a new trial.